## Richmond.

### PROCTOR v. SPRATLEY.

#### Absent, *Hinton,* J.*

January 10th, 1884.

1. SALES—*By sample—Instructions.*—An instruction is erroneous which assumes that if there was a sample exhibited, the sale was a sale by sample, unless seller declined to sell by it, and also required buyer to inspect the bulk, at his own risk; and that in some cases the jury may assume, where a sample is exhibited, that the sale is a sale by sample, even though seller may expressly decline to sell by it and require buyer to inspect the bulk at his own risk.

2. IDEM—*Sales by sample—Evidence.*—To authorize a jury to find that a sale is a sale by sample, the evidence must show that the parties contracted solely with reference to the exhibited samples.

3. PRACTICE AT COMMON LAW—*Instructions.*—It is no error where court refuses to give an instruction asked for, but gives one as favorable.

4. PRINCIPAL—*Agent—Acceptance.*—An agent may accept for his principal.

5. FRAUD—*Scienter essential.*—To constitute fraud, false representations are insufficient. Seller must know when he makes them that they are false. *Mason* v. *Chappell*, 15 Gratt. 572, 582.

6. PRACTICE AT COMMON LAW—*New trials.*—Where court below certifies the evidence, not the facts, the judgment will not be reversed, unless after rejecting all the exceptor's evidence and giving full faith to the adverse party's, the judgment shall appear wrong. Where the case before the jury depends on the credibility of witnesses, and new trial is denied by court below, this court will not reverse the judgment.

7. SALES BY SAMPLES—*Implied warranty—Caveat emptor.*—Unless parties deal with the sample with the mutual understanding that the bulk is like sample, the sale is not a sale by the sample, and otherwise there can be no warranty implied, and the maxim *caveat emptor* applies.

8. ACCEPTANCE—*Rejection—Bulk—Sample.*—The place and time of delivery is the place and time of acceptance, or of rejection for non-conformity of bulk with sample.

* He had been counsel below.

9. SALES—*Case at bar* is one where the evidence does not establish a sale by sample; but where even if it did, it establishes such acceptance and exercise of ownership over the goods sold, after full knowledge of the non-conformity of the bulk with the sample, and settlement between buyer and seller at contract price as precludes rescission.

Error to judgment of hustings court of city of Petersburg, rendered May 4th, 1881, in a suit wherein Stith Spratley and Ruffin J. Spratley, the appellees, were plaintiffs, and William H. Proctor, the appellant, was defendant. Stith Spratley exhibited to Proctor samples of his peanuts, and offered to sell them, but said the bulk did not equal the samples. Afterwards Proctor bought them, and by his direction they were delivered to his agent at Moss' tramway, in Surry county, Virginia, weighed and marked with Proctor's stencil, and shipped to his commission merchants in New York, who, receiving them, compared bulk with samples, and finding non-conformity, wired the fact to Proctor, and sent him samples of the bulk. But with such knowledge, those merchants, as agents of Proctor, sold 200 bags of the peanuts, and Proctor, with similar knowledge, settled with Spratley at contract prices, and gave him a check in full, but requested him to hold it up for a few days. Next morning Spratley, needing some cash, returned the check, and received instead two checks, one for $2,500, the other for a less sum. Later, Proctor countermanded the $2,500 check, forced Spratley to return the money drawn on the other, and take an order on his commission merchants in New York for the peanuts. This Spratley did, and then sued Proctor for the loss upon the resale. In the suit Spratley obtained verdict and judgment for $1,620. To that judgment Proctor obtained a writ of error and *supersedeas*.

At the trial the defendant asked the court below to instruct the jury as follows:

First—The jury are instructed, that it is one of the

recognized rules of law, that in a sale of goods by sample, the vender warrants the quality of the bulk to equal that of the sample. In such sale there is also an implied condition, that the buyer shall have a fair opportunity of comparing the bulk with the sample. It must not be assumed, however, that in all cases where a sample is exhibited, the sale is a sale by sample, for the vender may show a sample, but decline to sell by it, and require the purchaser to inspect the bulk at his own risk.

Second—If the jury believe from all the evidence in this cause, that the sale of the peanuts by Stith Spratley to the defendant was made by a sample, exhibited at the time of such sale, and that upon an inspection and comparison of the bulk of said peanuts with said sample, made by the defendant or his agent within a reasonable time after their delivery, it was ascertained that the bulk of said peanuts were inferior in quality to and did not correspond with said sample, and that the plaintiffs had notice thereof within a reasonable time, then they must find for the defendant, unless the jury believe further, from the evidence, that after the peanuts purchased by the defendant of the plaintiffs, were received and inspected by the defendants or his agent, and the sample exhibited at the time of the sale compared with the bulk; that the said defendant personally, or by his agent, exercised any act of ownership over them, or did any act amounting to an acceptance of them, the said acceptance is a waiver of any objection to their quality, and the failure of their quality will not afterwards avail him as a defence, except in case of fraud; but the proof of such acceptance must be clear and unequivocal, and not founded upon or induced by a mistake as to the facts at the time of such reception by the agent, and it is a question for the jury whether, under all the circumstances, the acts which the buyer or his agent does, or forbears to do, amounts to an acceptance.

Third—The jury are instructed that a defrauded vendee has the right, within a reasonable time after the knowledge of the fraud, to rescind the contract, unless he has, with such knowledge, affirmed the sale by express words or unequivocal acts, or while he is deliberating an innocent third party has acquired an interest in the property.

Fourth—If the jury believe, from the evidence, that the plaintiff intended, by the exhibition of the samples to the defendant, taken in connection with all he said and did at the time the alleged contract of sale was made, to impress the defendant with the belief that he was selling by sample, and that the defendant believed he was purchasing by the sample so exhibited, then they must find for the defendant, unless they further believe from the evidence, that the bulk did correspond in quality with the sample, or that the defendant has, by clear and unequivocal acts, accepted the peanuts after knowledge that the bulk did not correspond in quality with the sample.

The court refused, and the defendant excepted. The court then gave the jury four instructions as follows, to the first three whereof the defendant excepted:

1. The jury are instructed that it is one of the recognized rules of law that in a sale of goods by sample, the vender warrants the quality of the bulk to be equal to that of the sample. In such sale there is also an implied condition that the buyer shall have a fair opportunity of comparing the bulk with the sample. The mere exhibition of a sample, however, at the time of sale is not of itself conclusive evidence that the sale is by sample, and in order to give it that character, it must appear that the sale was made with an express or implied understanding between the parties that the bulk of the goods corresponded with the portion exhibited.

2. If the jury believe from all the evidence in this cause that the sale of the peanuts by Stith Spratley to the de-

fendant was made by a sample exhibited at the time of such sale, and that upon an inspection and comparison of the bulk of said peanuts with said sample, made by the defendant or his agent, within a reasonable time after their delivery, it was ascertained that the bulk of said peanuts were inferior in quality to and did not correspond with said sample, and that the plaintiff had notice thereof within a reasonable time, then they must find for the defendant, unless the jury believe further from the evidence that after the peanuts purchased by the defendant of the plaintiff were received and inspected by the defendant or his agent, and the sample exhibited at the time of the sale compared with the bulk, that the said defendant personally or by his agent exercised any act of ownership over them, or did any other act amounting to an acceptance of them. The said acceptance, if proved to their satisfaction by clear and unequivocal proof, is a waiver of any objection to their quality, and the failure of their quality will not afterwards avail him as a defence except in case of fraud.

It is a question for the jury whether, under all the circumstances, the acts done by the 'defendant amount to an acceptance.

3. The jury are instructed that a defrauded vendee has the right, within a reasonable time, after knowledge of the fraud, to rescind the contract, unless he or his agent has, with such knowledge, affirmed the sale by express words or unequivocal acts, or, while he is deliberating, an innocent third person has acquired an interest in the property; but the jury must be further satisfied that if there was fraud, it was known to the vender at the time of the transaction.

4. If the jury believe from the evidence that the plaintiff intended, by the exhibition of the sample to the defendant, taken in connection with all that he said and did, at the time the alleged contract of sale was made, to impress the

defendant with the belief that he was selling by sample, and that the defendant believed he was purchasing by the sample so exhibited, then they must find for the defendant, unless they further believe from the evidence that the bulk did correspond in quality with the samples or that the defendant or his agent has, by clear and unequivocal acts, accepted the peanuts after knowledge that the bulk did not correspond in quality with the sample.

The defendant also moved the court to set aside the verdict as contrary to the law and the evidence, which motion being overruled, the defendant again excepted.

Opinion fully states the facts.

*W. W. & B. T. Crump, J. A. Jones* and *O. G. Kean,* for the plaintiff in error.

*Pegram & Stringfellow* and *R. T. Wilson,* for the defendants in error.

FAUNTLEROY, J., delivered the opinion of the court.

The appellant, Proctor, a merchant and dealer in peanuts in the city of Petersburg, some time in August, 1879, sent a message, or messages, to the appellee, Stith Spratley, a farmer and grower of peanuts in the county of Surry, with reference to buying his peanuts, who not long thereafter—viz: about 10 o'clock in the morning on the 17th day of September—came into Proctor's office and exhibited to him samples of his two lots of peanuts, and told him that his crop, then in his barn in Surry, consisted of about 500 bags of the best peas, and about 100 bags of the low grade of nuts.

As to whether there was any offer for the purchase of the peanuts made at that time, the evidence was conflicting, but upon the return of Spratley, the appellee, to the

office of Proctor, the appellant, about 3 o'clock. P. M., on the same day—Proctor having in the meantime received a letter from his consignees in New York, giving unfavorable information as to the state of the peanut market—agreed to buy both lots of peanuts—the best lot at $1.26 per bushel, and the low grade lot at 85 cents per bushel, both lots of peanuts to be delivered at Moss' tramway, in the county of Surry, on James river.

In pursuance of the express terms of the sale, the peanuts were delivered, weighed, and marked with Proctor's stencil, at Moss' tramway, by Stith Spratley, and shipped, as directed by Proctor, in Proctor's name, to the parties in New York to whom he directed they should be sent, viz: Messrs. Garlick & Phillips, his own commission merchants. Three hundred bags of the peanuts were received by Garlick & Phillips on the 3d or 4th of October, who at once compared the bulk with the sample by which Proctor claimed to have purchased, and which he had previously sent to them by mail; and they found that the bulk was not as good as the sample sent. They telegraphed this fact to Proctor the same day, and sent to him a sample of the bulk. With this full knowledge of the non-conformity between the sample and the bulk, Garlick & Phillips, as the agents of Proctor, sold that day 200 bags of the peanuts.

On the 6th of October, the balance of the whole bulk of nuts arrived in New York—the good lot consisting of 564 bags, and the poor lot consisting of 30 bags. Garlick & Phillips at once sampled the good lot again, and on the same day (October 6th) reported again to Proctor the non-conformity of the bulk with the sample, and sent to him a second sample drawn from the *good* lot, by the Old Dominion Steamship Company, on the 7th or 8th of October, there never having been any objection whatsoever made to the *poor* lot. The letter from Garlick & Phillips to Proc-

tor, giving to him this second notification of the non-conformity between bulk and sample, and advising him that they had sent to him a sample from the bulk by the O. D. S. Co., was received by Proctor on the 8th of October, and, about 3 o'clock P. M. October 9th (next day), with a full knowledge of the non-conformity between the bulk and the sample, twice communicated to him by his commission merchants, he settled with Spratley for both lots of peanuts, at *the contract price*, giving him his check for $3,146.47 in payment. Spratley proposed, as an accommodation to Proctor, not to draw the money out of bank for some days; but finding, after parting with Proctor, that he would need some of it, he gave the check to his nephew, John Spratley, and told him to see Proctor the next morning, and get him to give him (Spratley) two checks in its stead—one for $2,500, and the other for $646.47; and to collect the smaller check, and let the other remain uncollected.

On the morning of the next day (October 10th), Proctor received the sample sent to him by Garlick & Phillips on the 7th or 8th of October by the O. D. S. Co.; and, subsequently, on the same day, assured as he now was of the non-conformity between the bulk and the sample by which he claims that he purchased, not only by two communications received from his commission merchants, but by personal inspection of the sample sent to him from the bulk of the peanuts in the hands of his agents and consignees in New York, he received back from John Spratley his (Proctor's) check for $3,146.47, which he had given the day before in payment for the peanuts to Stith Spratley, and gave in its stead, as requested by Stith Spratley, two checks, one for $2,500.00, and the other for $647.46.

Proctor subsequently stopped the payment of the $2,500 check, which Spratley, to accommodate him, had not collected, and forced Spratley to pay him back the $647.46, which he had collected, and to take an order on Garlick &

Phillips for the peanuts, which Spratley did, telling him at the time that he would give him back the money, take the peanuts and sell them, and sue him for the loss upon the resale.

The loss upon the resale (which was for the best price that could be obtained on the New York market, after a rapid and heavy decline in the price of peanuts), was $1,620.00, for which sum Spratley obtained judgment in the hustings court of the city of Petersburg. Proctor moved the court to set aside the verdict of the jury, as being contrary to the law and the evidence; which motion the court overruled, and Proctor excepted to the opinion of the court; and the case is in this court by writ of error and *supersedeas* to the judgment of the said hustings court of the city of Petersburg.

The appellant, who was defendant in the court below, asked the court to give to the jury *three* instructions, which the court refused to do, and gave, instead thereof, four instructions of its own.

As to instruction No. 1, given by the court, and the refusal to give the *first* instruction asked for by the defendant, an inspection and comparison of the two shows that instruction No. 1 was certainly not to the prejudice of the defendant, whilst the first instruction asked for by the defendant and refused by the court is manifestly untenable in law, in that it instructs the jury to assume that, although there was no express or implied understanding between the contracting parties that the bulk of the goods should correspond with the portion exhibited, yet, if there was a sample exhibited, the sale was a sale by sample, unless the vender both declined to sell by it and also required the purchaser to inspect the bulk at his own risk; and that, in some cases, the jury may assume, where a sample is exhibited, that the sale is a sale by sample, even although the vender may expressly decline to sell by it, and may require the purchaser to inspect the bulk at his own risk.

That a jury can never *assume* that a sale is a sale by sample, the court in *Beirne* v. *Dord*, 1 Seld. (N. Y.) Rep. 98, say, "to authorize a jury to find such a contract, the evidence must satisfactorily show that the parties contracted solely with reference to the sample exhibited." See also Benj. on Sales, page 564, and section 564, and note (e); *Day et als.* v. *Raquet et al.*, 14 Minnesota, 277 ; *Bernard* v. *Kellogg*, 10 Wall. 383; *Warren* v. *Mason*, 18 Wend. 425, and Story on Contracts, § 540.

The instruction No. 2 given by the court, instead of the second instruction asked for by the defendant and refused, is stronger in his favor than the one asked for and refused. The language of the two is almost identical, the difference being in defendant's favor, that the instruction given implies that the defendant could not accept at all by an agent, whereas the instruction refused asserts that, under certain circumstances, an agent might accept for his principal.

That an agent may accept for a principal, see Benj. on Sales, § 144, note (p), and cases there cited.

In regard to the third instruction given by the court, instead of the *third* refused to the defendant, the cases cited last above are conclusively in point, so far as the question of agency is involved; and as to the question of fraud, which is also referred to in this instruction, it is enough to say that the evidence in the record does not establish what the defendant asserts. The instruction given by the court correctly expounds the law on the question of *fraud*. There can be no fraud without dishonest intention—no such fraud as was formerly termed a legal fraud. Benj. on Sales, § 429. There must be a concurrence of fraudulent intent and false representation. Benj. § 454, and note (k), with cases there cited; see also §§ 460 and 461. "It is not sufficient that there shall be false representations by the vendor; but he must know, at the time that he makes them, that they are false." *Mason* v. *Chappell*, 15 Gratt. 572. 582.

Appellant makes no objection to instruction No. 4 given to the court; yet that instruction embodies everything with respect to agency of which he complains in instruction No. 3. It is a condensation of the law of the case, and is certainly not prejudicial to the defendant; but, on the contrary, it was objected to by the appellees.

We are of opinion that, in the matter of the instructions given and refused by the court, there was no error to the appellant's prejudice for which a new trial should have been granted.

We come now to the question, whether the evidence was sufficient to sustain the verdict of the jury.

Bill of exceptions No. 1 sets forth the testimony of the witnesses, respectively, and certifies the *evidence* and not the *facts* proven. This court, by an unbroken current of decisions, has held that it will not reverse the judgment of the court below unless, after rejecting all the evidence of the exceptor, and giving full faith and credit to that of the adverse party, the decision of the court shall then appear to be wrong. *Read's Case,* 22 Gratt. 924; *Vaiden's Case,* 12 Gratt. 717; *Scott & Boyd* v. *Shelor,* 28 Gratt. 899–900; *Dean's Case,* 32 Gratt. 912. The evidence certified is conflicting, but in *Patterson* v. *Ford,* 2 Gratt. 19, the court held, "When the case before the jury depends upon the credibility of witnesses, and the court below refuses to grant a new trial, this court will not reverse the judgment." See also *Grayson's Case,* 6 Gratt. 712, (5–6.)

Bill of exceptions No. 2 purports to certify *the facts proven;* but upon many points, and, indeed, the most material points, it certifies the testimony; and upon the question whether this was a sale by sample or not, the court expressly refuses to certify what facts were proven, but certifies that the evidence was conflicting, and refers the appellate court for information to the evidence certified in bill of exceptions No. 1. On these points bill of excep-

tions No. 2 is a certificate of *evidence* and not of *facts* proven. In addition to the authorities above quoted, see also *Danville Bank* v. *Waddill's Adm'r*, 31 Gratt. 475; *Gimmi* v. *Cullen*, 20 Gratt. 451–2; and opinion of court in *Reads' Case*, 22 Gratt. 928.

The grounds of the defence in the court below were:

1. Breach of the warranty or condition of the agreement for sale by sample. The court certifies that the evidence on this point was conflicting, and does not certify the facts proven, and upon the rule already stated as the settled practice of this court, we disregard the evidence for the appellant and look only to the evidence for the appellees upon the contradicted point as to whether there was any agreement for sale by sample in this case. Stith Spratley states emphatically that he told Proctor before the sale, "I don't think my crop as good as the sample"; and, again, before he left Proctor's office, "Captain, bear in mind that my peanuts will not come up to that sample." John Spratley says that subsequent to the sale Proctor confessed to him that when Stith Spratley sold him the peanuts, he told him that his crop would not come up to the sample. In Stith Spratley's letter to Proctor, written October 13th, he says: "You very well know that when I sold you the peanuts, I told you they would not come up to the sample I showed." And Proctor, himself, the only witness asserting that the sale was a sale by sample, says that Spratley said to him: "Captain, I don't know that my whole lot will run exactly up to that sample."

This incontrovertibly shows that the sale was not a sale by sample, and it was a question for the jury to determine whether the sale was a sale by sample or not; and they would not have been justified in finding that it was, unless they believed from the evidence that "both parties mutually understood that they were dealing with the sample with the understanding that the bulk was like it." In this

case neither Spratley nor Proctor so understood it. If the sale was not a sale by sample, there can be no warranty of quality *implied;* and the maxim *caveat emptor* applies.

The second ground of defence was "failure of consideration." This defence cannot be made in this case. It is certified as a fact proven that in pursuance of the terms of the sale, the peanuts were delivered, weighed and marked with the defendant's (Proctor's) stencil, at Moss' tramway, by Stith Spratley, and shipped, as directed, in Proctor's name to the parties to whom he directed they should be sent. Moss' tramway, being the place of delivery, was the place and time at which the comparison between the bulk and the sample should have been made, and at which the appellant should have elected to reject the bulk for want of conformity, or he is estopped from doing so afterwards. See Kent's Comm. 670. The peanuts were marked with Proctor's stencil and shipped in Proctor's name to his agents and commission merchants by his express direction. The title vested immediately in Proctor, and the acceptance was complete. Benj. on Sales, § 362.

The second act of acceptance took place upon the arrival of the peanuts in New York, when Proctor's agents and consignees, Garlick & Phillips, to whom they had been shipped by his direction, took possession of them, and, after comparing the bulk with the sample by which Proctor claimed to have bought, and noticing its inferiority to said sample, offered the peanuts on the market for sale, and did actually sell a considerable portion of them. This was an act of ownership by an agent with full knowledge of the non-conformity of the bulk with the sample. There was no restriction upon the agency of Garlick & Phillips; and it is idle to contend that, as commission merchants and agents of Proctor, they could not accept for him. But Proctor himself, with a full knowledge of the non-conformity between the bulk and the sample, communicated to

him once by telegram and twice by letters and sample from Garlick & Phillips, *settled* with Stith Spratley for both lots of peanuts at the *contract price,* and gave him his check for $3,146.47, in full payment; and on the next day, after this settlement and payment to Stith Spratley, Proctor, fully advised by Garlick & Phillips, both by telegram, letters, and sample, of whatever fraud had been practiced upon him, and that the bulk was not as good as the sample, affirmed the settlement made with Stith Spratley the day before, by receiving back his check for $3,146.47, and giving to John Spratley in its stead two checks—one for $2,500, and the other for $646.47.

His acceptance and his title were complete, and he was so far bound by his acceptance that he could not rescind, either for want of conformity between bulk and sample, even if the sale had been by sample, or for *fraud.* See *Christian* v. *Scott,* 18 Amer. Dec. 68 and 69 ; Benj. on Sales, §§ 452 and 453. *Fraud* is a question of fact to be determined by the jury from all the circumstances of the case, (see 1 Amer. Dec. 607), and the record shows that the jury who tried this case was a select jury of *merchants,* and not likely to have had any prejudice against a *fellow-merchant* in favor of a *farmer.*

When the question of *fraud* has been passed upon by the jury, an appellate court will never infer it and grant a new trial. See *Hollingsworth* v. *Napier,* 2 Amer. Dec 268 ; *Bandin* v. *Roliff,* 14 Amer. Dec. 11 and 12, and the cases there cited.

Whether the imputation of *fraud* be *suppressio veri,* or *suggestio falsi,* the case of *Mason* v. *Chappell,* 15 Gratt. 582, settles the law in Virginia, that the *scienter must be shown.* There is no evidence in the record to establish this, and, on the contrary, the act of Spratley, after Proctor had fully settled with him and paid for the peanuts, of voluntarily and without compensation lending him $2,500.00

of the purchase money, satisfactorily repels all arguments or imputation of fraud, for no sane man, intending to perpetrate a fraud, would, after he had the fruits of his iniquity in his grasp, volunteer to relinquish it.

The certified evidence in the record shows that on the 19th of October, when Spratley was settling with Proctor for the peanuts, Proctor said to Spratley that he had received a letter from Garlick & Phillips, complaining that the peanuts did not come up to the sample; whereupon Spratley said to him, " Captain, if you do not think they come up to the sample, pay me what Gwaltney offered." To which Proctor said, " No; he would pay what he had agreed he would, lest people should say he had objected *because peanuts had gone down.*"

They continued to decline, rapidly and heavily, and Proctor stopped the payment by the bank of the check which he had given; and then, at a subsequent interview with Spratley, refused Spratley's offer to *" referee "* the matter to three disinterested persons, and let them say what the peanuts were worth at the time when he bought them; and said that he would *" referee "* it if Spratley would let them decide what the peanuts were worth *at that time,* instead of at the *time he bought them.*

This is the key to this whole controversy. We are of opinion that there is no error in the judgment complained of; and that the verdict is correct, and the judgment of the court below must be affirmed.

JUDGMENT AFFIRMED.